IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

GRACIE PROCTOR,                    )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )          Case 10-4246-CV-C-ODS
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
                    Defendant.     )

## ORDER AND OPINION AFFIRMING FINAL DECISION

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her disability application.  The Commissioner's decision is affirmed.

## I.  BACKGROUND

Plaintiff is a 53-year-old female smoker who alleges she became disabled on November 2, 2007.  The ALJ found she suffered from the following severe impairments: moderate degenerative disc disease of the cervical and thoracic spine; degenerative joint disease of the knees, status post arthroscopy; Hepatitis C; hypertension; obesity; major depressive disorder, recurrent, moderate; PTSD; generalized anxiety disorder; and history of substance abuse disorder.  The ALJ concluded Plaintiff was not disabled after finding she retained the residual functional capacity (RFC) to perform other work existing in the national economy.

## II.  DISCUSSION

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole.  *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011).

Substantial evidence is relevant evidence a reasonable mind would accept as adequate to support a conclusion. *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered. *Id.* If two inconsistent positions can be drawn from the evidence, and one of those positions represents the ALJ's decision, it will be affirmed. *Id.*

*(1) Opinion Evidence*

Plaintiff argues the ALJ erred in giving great weight to the opinion of a non-examining state agency psychological consultant while giving little weight to the opinion of a consultative psychologist who examined her. During the consultative psychologist's examination on November 2, 2007, Plaintiff exhibited and reported a high level of anxiety. The consultative psychologist opined:

> Although she appears capable of understanding and remembering instructions, her ability to maintain concentration and persistence tasks [sic] is expected to be significantly impaired by her anxiety and depression. She has extreme difficulty keeping her thoughts focused, and her efficiency and productivity would likely be unacceptable to employers. Although she possess appropriate social skill, she has great difficulty interacting with people due to her excessive anxiety.

Plaintiff was assigned a GAF score of 48.[1]

About three weeks later, the state agency psychological consultant rendered his opinion (which the ALJ gave great weight). He acknowledged the consultative psychologist's examination and, similar to the consultative psychologist, opined Plaintiff could "understand and follow simple instructions" and had "intact social skills" despite having become socially withdrawn. But, unlike the consultative psychologist, the state agency psychologist opined Plaintiff retained "the ability to do routine work in a low stress setting," and he did not find that Plaintiff's mental impairments would significantly

---

[1] A score in the 41-50 range reflects and individual with serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).

impair her ability to maintain concentration and task persistence.

Plaintiff argues that her "examining sources [sic] [was] in the best position to assess [her] medical impairments." Pl.'s Brief at 11. Social security regulations provide that, "[g]enerally," more weight is given to the opinion of a source who examined a claimant than to the opinion of a source who did not. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). But that does not mean an examining source's opinion always trumps the opinion of a (non-examining) state agency medical or psychological consultant.

SSR 96-6P, 1996 WL 374180 (S.S.A.) specifically discusses such consultants. The Ruling notes "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." *Id.* at *2. The Ruling goes on to explain:

> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

The ALJ gave greater weight to the state agency psychological consultant's opinion in part because the state agency consultant had a higher academic degree (doctorate) than the consultative psychologist (master's). This appears to be a reasonable factor to consider in weighing opinions, and Plaintiff does not challenge it. The ALJ also found the state agency psychological consultant's opinion to be "well supported by the medical evidence of record and indications of claimant's activities of daily living, which by her own admission included working."

Claimant's medical records revealed she received regular refills of her Xanax prescription from her primary care physician for her anxiety; however, during her numerous contacts with other doctors, they did not note her to be frequently anxious.

She also never pursued specialized treatment for her anxiety, which the ALJ noted. Plaintiff correctly asserts that, under SSR 96-7P, an ALJ cannot draw any adverse inferences about her mental symptoms and their functional effects from her failure to seek or pursue regular medical treatment without first considering her explanation that she could not afford such treatment. *See*1996 WL 374186, at *7 (S.S.A.) But in the Eighth Circuit, the failure to seek specialized treatment can still be a basis for discrediting a claimant if – like here – there is no evidence the claimant sought and was denied access to such treatment due to financial constraints. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir.1999) (noting "there is no evidence to suggest that he sought any treatment offered to indigents" (citations omitted)); *Clark v. Shalala*, 28 F.3d 828, 831 n. 4 (8th Cir.1994) ("Economic justifications for the lack of treatment can be relevant to a disability determination. However, the claimant offered no testimony or other evidence that she had been denied further treatment or access to prescription pain medicine on account of financial constraints" (citation omitted)).

And, as the ALJ found, Plaintiff was working. She testified she was employed at McAlister's Deli as a waitress/hostess, earning approximately $175 net income every 2 weeks. This evidence supports the state agency psychological consultant's opinion and undermines the consultative psychologist's opinion. Plaintiff offers no argument to the contrary.

Plaintiff notes "[t]he reviewing psychologist did not have access to the complete medical file when making his assessment." Pl.'s Brief at 10. But neither did the consultative psychologist; both were working off the medical evidence that existed at the time. Plaintiff also argues "the ALJ formed his own opinion of the medical evidence instead of relying on the interpretation of an examining source." Pl.'s Brief at 11. But the ALJ did not "form[ ] his own opinion"; he relied on the state agency psychologist's opinion. Plaintiff lastly contends, "If the ALJ needed additional information as to the Plaintiff's psychiatric impairments, he should have ordered another consultative examination." *Id.* But the ALJ did not need additional information, so a second consultative examination was unnecessary. The ALJ's decision with respect to the psychologists' opinions is supported by substantial evidence in the record as a whole.

*(2) Credibility*

According to Plaintiff, "The hearing decision unreasonably evaluates the Plaintiff's daily living activities as being inconsistent with disability. It states that the Plaintiff could not have been disabled since she prepares meals, cleans her house, occasionally shops for groceries, and writes down appointment times." Pl.'s Brief at 14. This second sentence is a gross mischaracterization. The main reason the ALJ discounted Plaintiff's credibility had nothing to do with the daily activities she cites; it was because the ALJ found Plaintiff failed to disclose work she had performed even though the ALJ asked her about it.

At the hearing, the ALJ identified several of Plaintiff's last jobs and asked, "Aside from these jobs, can you think of any other job that you have had since 1995, where you would have earned $500 or more in any one month?" Plaintiff answered, "No, sir," but then added that she had been working at McAlister's Deli since August 2009. Plaintiff's medical records, however, reveal that she had performed other work from which she received unreported income. In July 2008, she reported she was "working on [her] feet a lot" and requested Toradol (an NSAID) and/or Percocet. During her physical therapy evaluation in November 2008 following her left knee surgery, Plaintiff reported she "usually works as an interior/exterior painter for homes, cleans decks and also had been working part-time as a fast food waitress." Later that month, Plaintiff reported to her primary care physician that she "is still working painting and generally feels like she is getting along well following her knee surgery." In June 2009, Plaintiff went to the emergency room after she allegedly fell from a shed roof she was painting. According to a later doctor's note, she reportedly returned "to work" the next day and was "back up on a ladder" in 5 days, when she allegedly fell again.[2] A July 2009 note from her primary care physician states, "She has fallen off a ladder several times. I told her she should not be climbing a ladder, but she says that is how she makes her living. She is a

---

[2] Plaintiff reacted angrily during her first emergency room visit after being told she would not be prescribed narcotics. During the second emergency room visit, the physician questioned Plaintiff's account of her injury. She was told she would be provided further painkillers if she would submit to a drug screen with negative results. She refused.

painter." The ALJ found Plaintiff's credibility was "severely diminished, in light of the significant omissions regarding her work activity."

The Court notes the ALJ only asked Plaintiff about work from which she earned *$500 or more per month*. It is at least possible Plaintiff never earned this amount from the work reported in her medical records (e.g., painting). But if this possibility were true, the Court would expect Plaintiff to have raised the argument in her brief. She does not; she does not even acknowledge that her failure to disclose this work was the main reason the ALJ discredited her. She instead depicts the ALJ's credibility determination as hinging solely on her limited daily activities (preparing meals, cleaning her house, etc.), which it clearly did not. The ALJ's finding as to Plaintiff's credibility is supported by substantial evidence in the record as a whole.

*(3) RFC*

The ALJ found Plaintiff retained the RFC to perform light work with nonexertional limitations. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (S.S.A.) Plaintiff argues "[t]he records clearly demonstrate that standing for 6 hours a day would be impossible for the Plaintiff due to knee and hip complications." Pl.'s Brief at 12. In support of this argument, Plaintiff cites her "several knee surgeries" and asserts she "was hospitalized and treated for knee pain on multiple occasions." *Id.* But the knee pain she experienced before her latest knee surgery (in October 2008) was apparently resolved by that procedure because her doctor noted she was "experiencing no pain" during a followup appointment 12 weeks later, and he released her to return to work without restrictions. And her "hospitalizations" were emergency room visits where she complained of knee pain caused by an injury (such as a fall), not as a routine symptom of working. Plaintiff also cites in support of her argument a CT scan from June 2009 which her doctor interpreted as showing moderate/moderately severe degenerative changes of her cervical spine. Plaintiff does not explain how a cervical spine condition affects her ability to walk, and, at any rate, the CT scan was performed during a period when she was reporting to her doctors that she was climbing ladders

while working as a painter.[3]  Plaintiff's medical records as a whole do not support her argument.

Plaintiff also cites her testimony in support of her contention she cannot stand and walk 6 hours in a workday.  But the ALJ discounted Plaintiff's credibility for good reasons, so her testimony is no basis for reversing the ALJ's RFC determination. Substantial evidence in the record as a whole supports the ALJ's RFC assessment.

III.  CONCLUSION

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: February 14, 2012                 UNITED STATES DISTRICT COURT

---

[3] This CT scan was taken during the emergency room visit when Plaintiff "requested pain medications multiple times" and "became very belligerent" when told she did not need them.